UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No.  3:18-cr-22 (VLB) |
| **v.** | |
| **CHAUNCEY EVANS, a.k.a. "CHAOS"** | January 18, 2019 |

### GOVERNMENT'S SENTENCING MEMORANDUM

I.     Introduction

The defendant is not a "career offender," as that term of art is now construed in the Guidelines context.  But he is, to be sure, a lifelong criminal, who has spent more than 20 years in prison in connection with his prior crimes of violence and numerous drug trafficking offenses.  He has 14 prior convictions dating back to 1898; and he committed the instant offense while on probation for selling drugs.

The Government submits this memorandum as an aid to the Court in fashioning an appropriate sentence and respectfully requests that the Court impose a Guidelines sentence.  In the Government's view, such a sentence is warranted and just, notwithstanding the defendant's history of abuse and the equitable considerations artfully stated in the defendant's sentencing memorandum.

On or about September 27, 2018, the Evans pled guilty to conspiracy to distribute cocaine base.  Under the terms of his plea agreement, he faces a statutory maximum of 40 years in prison and a minimum sentence of 5 years of imprisonment; a recommended guidelines range of 77 to 96 months of imprisonment; a term of supervised release of at least four years an up to life; and,

1

a fine range of $15,000 to $5 million. He is scheduled to be sentenced on January 23, 2019. His plea agreement contains the following stipulation of offense conduct:

> From in or about November of 2017 through on or about February 6, 2018, the defendant, Chauncey Evans, knowingly and intentionally joined in a conspiracy with Jermayne Butler, Ronnie Gordon, and others, to distribute and to possess with intent to distribute cocaine base in and around the city of New Haven, Connecticut. During the term of the conspiracy, and as part of the conspiracy, the defendant knowingly and intentionally possessed with intent to distribute cocaine base on multiple occasions, including but not limited to November 10, 2017, December 10, 2017, and December 15, 2017. As a result of the defendant's participation in the charged conspiracy, the amount of cocaine base that was reasonably foreseeable to the defendant and within the scope of his unlawful agreement, and which is therefore properly attributable to the defendant, is more than 28 grams but less than 112 grams of cocaine base.

II.   **Pertinent Background and the Defendant's Role in the Offense**

In or about June of 2017, the Federal Bureau of Investigation (FBI) initiated an investigation into a New Haven drug trafficking organization that was suspected of distributing cocaine base ("crack") in and around the New Haven area. The investigation employed various investigative techniques, including the gathering of intelligence from cooperating sources, surveillance, controlled purchases of drugs and seizures of drugs, and, ultimately, court-authorized wiretaps on multiple cellular telephones utilized by the subjects of the investigation. Intercepted communications, coupled with surveillance and other investigative techniques, revealed that Jermayne Butler was obtaining bulk quantities of crack and prescription opioids and distributing the drugs through a network of established and trusted mid-level and street-level redistributors.

Evans was one of the crack dealers Butler was supplying. On or about January 22, 2018, Evans was arrested on an outstanding warrant. He was in possession of three bags of crack cocaine, packaged for redistribution.

A sampling of the intercepted communications in which Evans participated and/or was referenced during the wiretap phase of the investigation is set forth below. Each summary contains the date of the intercepted communication and the session number assigned to the communication by the electronic device used to capture and record the communications. To the extent certain vague or coded terms can be interpreted based upon agents' training and experience, and/or knowledge gained from the underlying investigation in this case, those interpretations are set forth within the summary. Text messages are set forth verbatim and, therefore, often contain abbreviations and/or grammatical errors.

On November 21, 2017, in Session 1741 over Target Telephone 3, BUTLER spoke to a UM, who was using telephone number 203-836-0990 (UM0990), and the UM handed his telephone to Chauncey EVANS, a.k.a. "Chaos," who spoke to BUTLER. The conversation proceeded as follows:

 JB: Yo.
 UM: Yup, hold on.
 JB: What up?
 CE: Hello?
 JB: Yo.
 CE: What up?
 JB: What up with you?
 CE: Yo. It's um, it's me, Chaos.
 JB: Yeah.
 CE: Within an hour I'm going to need you to meet me over there. Um . . . I got 1350 for you.
 JB: Alright.
 CE: Alright.

It is believed that in the foregoing call, when EVANS said "I got 1350 for you" he was indicating that he wanted to meet with BUTLER to purchase a quantity of crack cocaine approximately slightly larger than one ounce.  It is known, based upon controlled purchases in this case and intercepted communications in this case, that BUTLER and his associates sell ounces of crack cocaine for $1,200 and sell "eight balls" for $150.  Accordingly, $1,350 would represent the price for one ounce (28 grams) of crack plus one "eight ball" (3.5 grams) of crack.

On December 10, 2017, in session 1042 over Target Telephone 1, EVANS spoke to Ronnie GORDON, a.k.a. "Pop."   The conversation in pertinent part proceeded as follows.

> RG: Hello?
> CE: Yo, it's K. What up?
> RG: Where you at, baby?
> CE: I'm at my house... Hello?
> RG: Ayo, ayo, this ain't bro. This- ya know what I mean. Where you at my nigga?
> CE: I'm at my crib. Who dis?
> RG: This, this Pop, yo.
> CE: I don't even know who this is.
> RG: Yeah, yeah, yeah. (UI) The phone though. He ain't around right now.
> CE: Oh, this-this-this Chaos.
> RG: Oh, oh, oh, oh. What up K? Where you at nigga?
> CE: I'm at my crib. Listen, um I need a half.
> RG: Aight, say no more. Um, I got you.
> CE: Huh? How long?
> RG: Right now. Where you at?
> CE: I live on 1st Avenue in West Haven.
> RG: Alright, I'm gonna call you when I get out there. I got you bro.
> CE: How long? Hurry up. Please.
> RG: Right-right-right now. I got you.
> CE: Alright.

It is believed that, in the foregoing communication, CHAOS arranged to purchase 14 grams of crack ("I need a half"), which represents a half-ounce of crack, from GORDON, who agreed to supply the crack to EVANS ("I got you bro"). Other intercepts revealed that GORDON held Target Telephone 1 for a period of time while BUTLER was out of the state and distributed crack to the organization's redistributors in BUTLER's absence.

On December 15, 2017, in sessions 1164 and 1166, over Target Telephone 1, EVANS spoke to BUTLER. The conversation in pertinent part proceeded as follows.

### Session 1164

| | |
|---|---|
| JB: | Yo. |
| CE: | What up Playboy? |
| JB: | What up with you? |
| CE: | I'm a have to see you. Your boy told you? |
| JB: | Oh what? |
| CE: | I had seen him, when you wasn't around. |
| JB: | Yeah. |
| CE: | And...he didn't give me everything. But listen, I'm a be, you know where "Neen" live at right? |
| JB: | Who? |
| CE: | Neen. |
| JB: | ...Nah. |
| CE: | You know Neen! Banger? |
| JB: | Oh yeah, yeah, yeah, yeah, in Fairhaven? |
| CE: | I'm a be, I'll be over there by like nine thirty. |
| JB: | Alright. |
| CE: | I want the whole one though. |
| JB: | Ohhh. Alright, well shit. I'm saying so... |
| CE: | Huh? |
| JB: | I'm trying figure out. Oh, I (UI) the old number, I gotch ya. |
| CE: | Alright. |
| JB: | Alright. |

It is believed that in the foregoing communication when EVANS said "I want the whole one though," he was indicating that he wanted to be

5

supplied with an ounce (28 grams) of crack from BUTLER.  It is further believed that BUTLER agreed to supply EVANS with an ounce of crack when he responded "I gotch ya."

**Session 1166**

CE:  What up baby?
JB:  Ayo, what happened?
CE:  I'm here.
JB:  Oh alright, I'll be there in a little bit homie.
CE:  Alright. You got the pills?
JB:  Huh?
CE:  You got them uh, things?
JB:  Nah.
CE:  Ah, shit. Alright.
JB:  Alright.

It is believed that, in the foregoing communication, EVANS inquired whether BUTLER had oxycodone pills available for redistribution.

Toll records indicate that in January of 2018 EVANS' known telephone number, (203) 507-7927, discontinued contact with Target Telephone 1, and began contacting telephone number (203) 843-5651, which was known to be utilized by Torrence GAMBLE, who headed cracks distribution operations for BUTLER in the Vernon Street area of New Haven.  Between January 2, 2018, and January 23, 2018, there were 8 contacts between EVANS' known telephone number, (203) 507-7927, and telephone number (203) 843-5651, which is the number known to be utilized by GAMBLE.

### III.     Discussion of Sentencing Considerations

The Federal Sentencing Guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220, 258 (2005). The *Booker* decision does not, however, reduce the Guidelines to "a body of casual advice, to be consulted or overlooked at the whim of the sentencing judge." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005); *see also United States v. Johnson*, 445 F.3d 339, 342 (4th Cir. 2006) ("By now, the Guidelines represent approximately two decades of close attention to federal sentencing policy."); *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006) ("The Guidelines were fashioned taking the other § 3553(a) factors into account and are the product of years of careful study."); *United States v. Cooper*, 437 F.3d 324, 331 n.10 (3d Cir. 2006) ("The federal sentencing guidelines represent the collective determination of three governmental bodies...as to the appropriate punishments for a wide range of criminal conduct."); *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005) ("The Sentencing Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.").

To the contrary, in the wake of *Booker*, the Guidelines remain an integral part of the two-step sentencing process that district courts must now employ. *See Crosby*, 397 F.3d at 110-118. Sentencing courts must first determine a defendant's applicable Guidelines range, including whether a departure is appropriate pursuant to the policy statements referenced in § 3553(a)(5). *Id.* at 111-112. Second,

sentencing courts must consider the applicable Guidelines range "along with all of the factors listed in section 3553(a)." *Id.* at 112-113.

District courts may impose non-Guidelines sentences, but they may do so only after determining a defendant's applicable Guidelines range in conjunction with the other factors set out in section 3553(a). *See Crosby*, 397 F.3d at 115 ("[A] judge would commit a statutory error...if the judge failed to 'consider' the applicable Guidelines range as well as the other factors listed in section 3553(a), and instead simply selected what the judge deemed an appropriate sentence without such required consideration."). Courts electing to impose non-Guidelines sentences must articulate the basis for such sentences; and appellate courts review non-Guidelines sentences using a reasonableness standard. *Booker*, 543 U.S. at 260-261; *Crosby*, 397 F.3d at 114; *see also* 18 U.S.C. § 3553(c) (requiring a district court to state the reasons for the imposition of a particular sentence).

IV. **Statutory Maximums and Guidelines Range**

A conviction for a violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, carries a maximum penalty of 40 years of imprisonment, a minimum penalty of five years of imprisonment, a period of supervised release of at least four years and up to life, a fine of up to five million dollars, and a special assessment of $100.

1. **Offense Level**

The defendant's base offense level is found at U.S.S.G. § 2D1.1(c)(8), which provides that the base offense level for conspiracy to distribute between 28g and 112g of cocaine base distribute is 24. *See* U.S.S.G. § 2D1.1(c)(8). The base offense level is reduced by three levels, because the defendant timely accepted

responsibility for his offense. See U.S.S.G. § 3E1.1(a). The defendant's adjusted offense level is, therefore, 21.

### 2. Criminal History Category

The Government agrees with the PSR's calculation of the defendant's criminal history, i.e., the defendant is in criminal history category VI. PSR ¶ 33 *et seq.*

### 3. Guidelines Range

An adjusted offense level of 21, and a criminal history of VI, results in an applicable Guideline range of 77 months to 96 months of incarceration. The Guidelines range for a term of supervised release is four to five years. The Guidelines range for a fine is $15,000 to $5,000,000.

## V. 18 U.S.C. § 3553(a) Factors

### 1. Nature and Circumstances of the Offense

Conspiracy to possess with intent to distribute crack is a serious offense. This is particularly so in Evan's case, because he has numerous, prior drug trafficking convictions, and he committed the instant offense while on probation for selling drugs. The sentence imposed, therefore, should reflect the seriousness of the defendant's persistent drug trafficking.

### 2. Sentencing Goals

Generally, a sentence should be significant enough to promote respect for the law, protect the public, and carry with it an appropriate general and specific deterrent effect. *See United States v. Tapia-Vitinio,* 463 F. App'x 11, 13 (2d Cir.

2011) (The Court should consider the need to promote both general and specific deterrence.).  As stated above, the defendant committed the instant offense while on probation for selling drugs.  And he did so against the backdrop of a criminal history that includes five prior convictions for selling drugs or possessing drugs with the intent to sell, three prior convictions for crimes of violence, and multiple convictions for failure to appear.  He is 46 years old and has served nearly 25 years in prison.  He has not been deterred.  Accordingly, the Government respectfully requests that the Court give appropriate weight to several sentencing goal, including the protection of the public, promoting respect for the law, and deterrence, when endeavoring to fashion an appropriate sentence in this case.

> 3.     Need To Avoid Unwarranted Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct.

The Guidelines exist for the precise purpose of reducing unwarranted disparities.  *See United States v. Arjoon*, 964 F.2d 167, 170 (2d Cir. 1992) ("One of the principal purposes of the Sentencing Commission was to establish policies and practices that avoided unwarranted sentencing disparities....");  *United States v. Joyner*, 924 F.2d 454, 460 (2d Cir. 1991) ("[A]n applicable guideline range may seem harsh..., but it is the same range applicable throughout the country for all offenders with the same combination of offense conduct and prior record.").  This factor, therefore, supports giving greater weight to the applicable Guidelines range; it is not a reason to depart from them.

## VI. Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence with the applicable Guidelines range of 77 to 96 months of incarceration.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

Patrick F. Caruso
Assistant United States Attorney


/s/     Patrick F. Caruso
David C. Nelson (ct17984)
Assistant United States Attorney
157 Church Street, Floor 25
New Haven, CT 06510
(203) 821-3700


## CERTIFICATE OF SERVICE

This is to certify that on January 18, 2019, a copy of the foregoing Government's Sentencing Memorandum was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/S/  Patrick F. Caruso
DAVID C. NELSON
ASSISTANT UNITED STATES ATTORNEY